## THOMAS G. ATKINS *vs.* GARDNER CHILSON.

A. demised to C., for eleven years, a store bounded on vacant land of S., "excepting and reserving unto said A. the right to stop up and build against the five windows in said store, which front upon" S.'s land, "and also to build against and put timbers into the wall on the side of said store in which the said five windows are, at his pleasure," and C. covenanted to pay the rent, to keep the demised premises in such repair as they were in at the commencement of the term, and that "nc

alterations or additions in or to the same" should be made, during the term, without A.'s written consent: There was also a provision in the lease, that if C. should neglect or fail to perform or observe any of the above covenants, A. might lawfully, and without further notice or demand, enter into and upon the demised premises, and repossess the same, as of his former estate: C. afterwards took a lease from S. of said vacant land, for fifteen years, terminable by himself in ten years, and erected a building thereon, in contact with the wall of the store in which said five windows were: A. subsequently entered upon the demised premises, and gave C. written notice that he had "entered for breach of the covenant against making alterations in the said premises, pursuant to the right of entry reserved in the lease," and then brought a writ of entry against C. to recover possession of the premises. *Held,* that C. had not, by thus erecting the building on S.'s lot, broken his covenant that no alteration should be made in the demised premises. *Held also,* that A., by giving notice to C. that he had entered for breach of the covenant not to make alterations, was restricted to the breach thus alleged, and could not maintain his writ of entry by showing that C. had broken his covenant *to* keep the demised premises in repair.

WRIT OF ENTRY dated July 28th 1842, to recover possession of a parcel of land, with a store thereon, situate in Blackstone Street, in Boston. Trial before *Wilde,* J. who made the following report thereof:

The tenant claimed to hold the demanded premises under a lease from the demandant, dated November 30th 1841, for eleven years from the 1st of January 1842. The demandant admitted the lease, but claimed the premises by virtue of an entry made by him, on the 16th of July 1842, for a breach, by the tenant, of the condition of the lease. The lease thus described the premises demised: "All that four story brick store, not now numbered, being on the estate which I purchased of the administrator of John K. Simpson, late of said Boston, deceased." After excepting and reserving to the demandant the right to use a pigeon house on the premises, the lease continued as follows: "Also excepting and reserving unto the said Atkins, his representatives and assigns, the right to stop up, and build upon and against the five windows in the said store, which front and look upon or towards Ann Street, in said Boston, and also to build against and put timbers into the wall on the side of the store, in which the said five windows are, at his and their pleasure, during said lease, upon the express condition, that said Chilson, and his representatives, and those who may hold under him, do and shall

make all repairs on said store and its appurtenances hereby
demised, which may be necessary during the term of this
lease, at his and their own expense, and without charge to
said Atkins and those holding, or who may hold, under him;
fire and unavoidable casualty excepted."

The tenant covenanted, in said lease, that he would pay rent
and taxes, and would keep the premises in such repair as they
were in at the commencement of the term, or might be put in
by said Atkins or his representatives, during the continuance of
the term, reasonable use and wear thereof, and damage by acci-
dental fire, or other inevitable accident, excepted.   The lease
also contained the following covenant of the tenant :   " And
the said Chilson further covenants and agrees to and with the
said Atkins, his heirs and assigns, that no alterations or addi-
tions shall be made, during the term aforesaid, in or to the
same, without the consent of the said lessor, or of those hav-
ing his estate in the premises, being first obtained in writing
allowing thereof."

After some other covenants, the lease proceeded thus: " Pro-
vided, always, and these presents are upon these conditions,
that if the said lessee, or his representatives or assigns, do or
shall neglect or fail to perform and observe any or either of
the above covenants hereinbefore contained, which on his or
their part are to be performed, then, and in either of said cases
the said lessor, or those having his estate in the premises, law-
fully may, immediately or any time thereafter, and whilst
such neglect or default continues, and without further notice
or demand, enter into and upon the said premises, or any part
thereof, in the name of the whole, and repossess the same, as
of his or their former estate."

The demandant offered evidence to prove the following
facts, which were not disputed by the tenant :   The said
Atkins, in 1840, purchased the land on which the store de-
scribed in the lease was erected.   There was then standing
on the land, but not covering the whole of it, an ancient brick
dwelling-house, the front of which was on Centre Street.   In
the eastern side wall of said house were five ancient windows,

receiving light and air over the adjoining land, belonging now or formerly to Sybilla Stodder and others. There was also an ancient wooden conductor (gutter) attached to said wal' by iron dogs, and extending from the front to the rear cf the house, which was used for the purpose of conveying water from the roof to a cistern in the yard. The conductor, over Stodder's land, was about eight inches from the wall, and was, at the highest point, about nineteen feet above the level of the sidewalk in Centre Street. The demandant, in 1841, took down said dwelling-house, and erected the said store, which covers the whole of the land from Centre Street to Blackstone Street. He preserved the old wall in which the five windows were, and put new glazed sashes into them. Two of said windows had blinds at that time, and the others, except one in the attic, had the remains of old hinges fixed in or to the casings. There were also turn-buttons to some of them, inserted in the brick wall. The demandant took down the conductor, and had it repainted and refastened to the wall. He also removed the cistern, which was formerly in the yard, and the trunks which conveyed water into the conductor. He affixed swinging shutters, plated with iron, to all said windows.

This was the condition of the demanded premises, when they were leased to the tenant.

After the execution of the lease aforesaid, the tenant ac quired possession of the Stodder land, under a lease from the owners, for fifteen years, terminable by himself in ten years, and erected a brick store thereon, three stories in height. The walls of it, fronting on Blackstone and Centre Streets, came close up to the walls of the demandant's store. The conductor and some of the turn-buttons of the windows were knocked down, or removed from their places, in the night time, and were found on one of the floors of the tenant's building, early in the morning, where they still remain. It did not appear, by whom they were removed, nor whether the turn-buttons, which were knocked off, came from either of the two win-dows which had blinds on them when the demandant pur-

chased the house. The demandant gave notice to the tenant, July 11th 1842, to replace the conductor and turn-buttons. The tenant had given orders to his builder not to remove the conductor; and the builder testified that he had intended to put a casing round it. He informed the tenant that the conductor was removed, and the tenant went and viewed it, and said that as long as it was down, he (the builder) might run the partition snug up against the demandant's wall. The partition was thereupon so placed, and now remains unaltered; and the conductor and turn-buttons have not been replaced. The tenant's partition is wood and plaster. The studs stand upright against the wall where the aforesaid five windows are; the tenant's wall, of which they are part, prevents the shutters from being opened; and the said lights are entirely closed and darkened. The studs and partition pass through and occupy the space which the conductor formerly occupied.

On the 16th of July 1842, the demandant made an open and peaceable entry into the premises demised to the tenant, and delivered to him the following writing : "To Gardner Chilson. Sir : Take notice I have entered on the premises described in the indenture of lease between you and myself, bearing date December 30th 1841, and taken possession thereof for breach of the covenant against making alterations in the said premises, pursuant·to the right of entry reserved to me in the said lease. 16th July 1842. Thomas G. Atkins."

The evidence introduced by the demandant tended to show, that when he took down the dwelling-house and erected the store, he replaced the conductor in the same position from which he had taken it, except that it was pushed back a few inches from Centre Street. The tenant did not admit that it had been replaced in its original position; and he introduced evidence to show that it was placed seven or eight feet higher on the wall. The demandant's evidence tended to show, that while he was negotiating with the tenant for a lease of store, the tenant attempted to obtain the control of the easements claimed by the demandant on account of said windows, and offered the demandant the sum of $100 a year for them dur-

ing the term of his lease ; which the demandant refused to accept.

The tenant introduced evidence tending to prove the following facts : That the store was of an entirely different construction from the house that was taken down, and was intended and used for a different purpose ; that the stories were much higher than those of the house ; that the apartments of the store did not correspond with the apartments of the house, in any respect; that the store had no partition between Blackstone Street and Centre Street, in any story ; that it was extremely well lighted, in all the stories, by the windows on the streets — having, on the lower story, on Blackstone Street, two large glazed doors and two windows, and four large windows in each of the other stories; that the five side windows, before mentioned, were not needed for the purpose of supplying the store with light and air; that four of them were so situated as to be inconvenient in using — the lower one being divided by the floor between two stories, and three others, which were small, being so near the ceiling of the second story of the store as not to be reached without a ladder ; and that only one window, which came in the third story of the store, could be conveniently used; that these five windows never had been used in the store, and that the shutters had always been kept closed ; that the tenant, who was the first person that occupied the store, had put shelves across all the windows, except the lower one; that before the time of the demandant's entry aforesaid, several studs had been placed in the wall of the building erected by the tenant, and with his consent, which passed through the space previously occupied by the conductor ; that when the demandant made his entry, only so many studs had been put in as were necessary to support the timber over them, (because the contractor, who erected the tenant's building, did not know but that the conductor would be replaced,) and that the full number of studs which were required was not put in till after the demandant's entry ; that at the time of said entry the conductor might have been replaced by an hour's work, and that it

might now be replaced by two or three hours' work, without injury to the tenant's building; that the conductor was not used in conveying water for the store, and was not connected with any thing at either end ; that the cistern to which it formerly gave water was carried away when the demandant's store was built, and that the space which it occupied came into the cellar of said store; and that the water from the roof of the store was never used, but was conveyed, by gutters and spouts, into the street on each front.

A suit in equity was brought by the demandant, against the tenant, before the demandant's entry, in which he sought, at first, to restrain the tenant from erecting his building, and now seeks to compel the tenant to remove his building, so far as to uncover the five windows in the demandant's store ; which suit is still pending before this court.   [See 7 Met. 398.]

The tenant also introduced evidence tending to show that he had directed the contractor, who erected his building, not to cut into or injure the wall of the demandant's store, and to case up the conductor without removing it, and that the contractor had made preparations for casing it up, previously to its being knocked down ; and that neither the tenant nor the contractor derived any benefit from its removal, except that the tenant's store was made so much wider.

The tenant also introduced evidence tending to show, that the aforesaid five windows had never been used in the store, and that they could not be of any use in it ; and that the demandant did not intend to use them for supplying light and air to the store.   One of the tenant's witnesses testified that the demandant had said that he should preserve enough of the old wall to prevent the Stodders from building on their land; that he was going to shut up the windows, and that the Stodders could not build upon their land, nor sell it, and that it would be worth only a trifle.

The tenant also introduced evidence tending to show that the conductor was of no use, and could be of none, to the store, and that the demandant had no intention of ever using it for the purpose of conveying water for the use of his store but preserved it, as he said, merely to claim a right.

The case was then taken from the jury by consent, the judge thinking that no fact, material to the decision, was in dispute. And the parties agreed that the whole court might direct a nonsuit or default, or order a new trial for the purpose of deciding upon any facts in dispute between the parties, which the court might deem material.

*C. P. Curtis*, for the demandant. The easements, which the demandant had in the Stodder land, increased the value of his own estate, and diminished the value of the servient estate. Gale & Whatley on Easements, (Amer. ed.) 6. And he has not abandoned those easements by altering his building, inasmuch as he expressly denied his intention to abandon them. *Moore* v. *Rawson*, 3 Barn. & Cres. 336. *Dana* v. *Valentine*, 5 Met. 13.

The tenant has broken his covenant to keep the demised premises in repair, and also his covenant that no alterations should be made in the same during the term. These breaches he has committed, by building on the Stodder lot so as to close the five windows, and by removing the conductor, (or availing himself of its removal by others,) and not replacing it. Comyn Land. & Ten. 189, 190. *Doe* v. *Jackson*, and *Penry* v. *Brown*, 2 Stark. R. 293, 403. *Monk* v. *Noyes*, 1 Car. & P. 265. Platt on Covenants, 285. *Duke of St. Albans* v. *Ellis*, 16 East, 352. *Roe* v. *Sales*, 1 M. & S. 297. *Jackson* v. *Brownell*, 1 Johns. 267. *Jackson* v. *Rich*, 7 Johns. 194. And the demandant has entered, pursuant to the terms of the demise, whilst the tenant's default continued, and has repossessed himself of his former estate. The right to insert these terms in the demise is unquestionable. A landlord, having the *jus disponendi*, may annex such conditions to his grant as he pleases, provided they be not illegal or unreasonable. *Cromwel's case*, 2 Co. 71 *b*. *Roe* v. *Galliers*, 2 T. R. 137. Comyn Land. & Ten. 98, 217, 221.

The form of the notice, given to the tenant by the demandant, on the 16th July 1842, is immaterial, as the lease provided that an entry might be made without notice or demand. The demandant made an entry, and would thereby

have become repossessed, even if he had given no notice, and if the lease had not provided that no notice should be necessary. *Butchei* v. *Butcher*, 7 Barn. & Cres. 399. *Dorrell* v. *Johnson*, 17 Pick. 266. *Curl* v. *Lowell*, 19 Pick. 25. Bac. Ab. Conditions, O. 2. 4.

*Fletcher & Sewall*, for the tenant. As the demandant gave notice that he entered for breach of the covenant not to make alterations, he is confined to the breach of that covenant, and cannot resort to the covenant to keep the premises in repair. By giving this notice, he waived his right, if he had any, under the other covenants.

The easements which the demandant claims were not leased to the tenant, and therefore the covenants in the lease do not apply to them. The demandant had no easement in the conductor, for it ceased to be of any use, and the right to it no longer existed. The right depended on the use. A burden on another's land shall not be continued when it is of no benefit to him who claims it. Besides; the removal of the conductor was not the tenant's act. He expressly directed his workmen not to remove it; and he cannot incur a forfeiture by the acts of others, for whom he has not stipulated. Nor was the removal of the turn-buttons his voluntary act. And he cannot incur a forfeiture by the acts of others, for whose doings he has not stipulated; nor for his own involuntary acts. Bac. Ab. Conditions, O. 1. 4 Leon. 38, pl. 104. *Gray* v. *Gray*, Cro. Jac. 525. *Goring* v. *Warner*, 2 Eq. Cas. Ab. 100.` *Jackson* v. *Corliss*, 7 Johns. 531. *Doe* v. *Carter*, 8 T. R. 57. *Doe* v. *Bevan*, 3 M. & S. 353. *Smith* v. *Putnam*, 3 Pick. 221.

The easement in the windows was not reserved by the demandant. His object was to prevent the tenant from claiming this easement. He meant to stop up the windows, if he should obtain the Stodder estate.

Neither of the easements, therefore, was appurtenant to the premises demised, and neither of them passed by the lease. *Kent* v. *Waite*, 10 Pick. 138. *Grant* v. *Chase*, 17 Mass. 443. *Johnson* v. *Jordan*, 2 Met. 234. *Gayetty* v. *Bethune*, 14 Mass. 49. *Whalley* v. *Tompson*, 1 Bos. & Pul. 371.

The demandant had abandoned the easements, before the demise to the tenant. The cistern, formerly connected with the conductor, had been taken away, and a permanent alteration of the condition of things had been made. *Cherrington* v. *Abney*, 2 Vern. 646. *Moore* v. *Rawson*, 3 Barn. & Cres. 332. Gale & Whatley on Easements, (Amer. ed.) 262.

The taking away of the conductor, even if done by the tenant, was not an "alteration" of the building. That term was used, in the lease, in its popular sense, and meant a change in the character of the building.

DEWEY, J. The demandant places his right to enter upon the demanded premises, for breach of the condition annexed to the lease, upon two grounds. 1st. A breach of the condition not to make any alterations in the demised premises. 2d. A breach of the stipulation to keep the premises in such repair as the same were in at the commencement of the lease.

1. Upon the first point, the principal ground of complaint arises from the erection of the building by the tenant on the Stodder lot ; and this, it is contended, is a violation of the agreement not to make any alterations in the premises. The effect of this act of the tenant was much considered in the former case between these parties, upon a bill in equity praying for an injunction against the tenant. Without expressing any opinion, as to the legal rights of the plaintiff in the easement claimed by him, the court were of opinion that the acts of the defendant furnished no sufficient ground for complaint by the plaintiff, during the continuance of the lease. *Atkins* v. *Chilson*, 7 Met. 398. The same is equally true in reference to these acts, when put forward, as they now are, as a ground of forfeiture of the lease. The tenant has made no alteration in the building leased to him, by any thing done directly to that building. The alteration, if any is made, is the effect produced by the erection of a building upon the adjacent lot of another person, which, it is alleged, has affected the light and air in reference to the building leased. But the tenant is alone injured by this, if it be an injury : and it is entirely competent for him to remove this new build-

ing, before the termination of his lease; and he may then restore the leased premises in the state they were in at the time of the taking of the lease. The court are of opinion, therefore, that no breach of the stipulation not to make alterations in the premises leased is shown by the evidence of the erection of the building on the Stodder lot. This being so, and as this is the only alleged breach of the stipulation not to make alterations that is proved to have occurred through the agency of the tenant, the demandant cannot sustain his right of entry for forfeiture for the breach of this particular stipulation.

2. As to the forfeiture of the rights under the lease, by reason of neglect to keep the premises in repair, the tenant insists that this ground is not available to the demandant in aid of the present action, inasmuch as by the form and declared purpose of his entry to revest the estate, no effectual entry was made, except for forfeiture by reason of making alterations in the premises, in violation of the agreement in the lease. The fact is undisputed, that the entry was accompanied by a special written notice, assigning the cause and purpose of such entry to be to take possession "for breach of the covenant against making alterations in the said premises."

The entry might have been good and effectual, if made solely under a declaration of the general purpose to revest the estate, by reason of condition broken, without suggesting any particular breach as the occasion and purpose of the entry. But the question then arises, whether, if the party making the entry superadds to it a declaration of the specific grounds of the alleged forfeiture and cause of entry, he is not bound by his specification, and restricted to the breach alleged as the occasion of his entry. Such seems to us to be the reasonable rule. An estate upon condition subsequent is not defeated, as a matter of course, upon breach of the condition. It is wholly at the election of the party to whom the estate reverts, whether he will avail himself of the breach as a cause of forfeiture. He may decline taking advantage of it; and

if so, the estate is not defeated. Now if he may wholly waive the right to forfeiture, by declining to enter for a breach, it would seem to follow, that if there are two or more causes of forfeiture, an entry particularly limited to one cause would be equivalent to declining to avail himself of his right of entry for other and distinct causes. This is a sufficient answer to the claim of the plaintiff, that the estate has revested in him by reason of the neglect of the defendant to keep the premises in repair. But if it were otherwise, and the entry of the plaintiff had been for this cause, yet we are strongly inclined to the opinion, that the plaintiff must fail in sustaining this breach as a cause of forfeiture of the lease. The want of repair, in the matter of the conductor, would not, under the circumstances of the case, lead to that result. The neglect to replace it forthwith occasions no injury to the building, nor is in any manner prejudicial to the present right of the lessor. If put in the state in which it was at the time of making the lease, at any period during the term, it will be quite sufficient.

Nothing is shown, therefore, that has occasioned a forfeiture of the lease, and the plaintiff must become nonsuit.